**UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION**

| | |
|---|---|
| Crypto Infiniti, LLC, | C/A No. 7:24-cv-04911-TMC |
| Plaintiff, | |
| v. | **CRYPTO INFINITI, LLC'S MOTION TO DISMISS COUNTERCLAIMS OF BLOCKQUARRY CORP.** |
| Blockquarry Corp. f/k/a ISW Holdings, Inc., Pantheon Resources, Inc. and Hylmen, LLC, | |
| Defendants. | |

Crypto Infiniti, LLC (hereinafter "CI" or "Plaintiff") moves to dismiss the counterclaims of Blockquarry Corp. f/k/a ISW Holdings, Inc. (hereinafter "BQ") pursuant to Fed. R. Civ. P. 12(b)(6). On September 17, 2024, CI filed an amended complaint. On November 18, 2024, BQ answered the amended complaint and filed counterclaims against CI for restitution, conversion, and trespass. (Answer and Countercl. at ¶¶ 150-165). BQ's counterclaims should be dismissed because they fail as a matter of law. Fed R. Civ. P. 12(b)(6).

## INTRODUCTION

This case arises out of the above-named defendants' decision to take cryptocurrency mining equipment (the "Equipment") not owned by them from a facility in Gaffney, South Carolina (the "Gaffney Facility"). Before taking CI's Equipment, and before the Gaffney Facility was padlocked, BQ executed a sub-lease to operate the facility and hired a third-party named Bit5ive, LLC to manage the same. The gist of BQ's counterclaims is that unbeknownst to BQ, Bit5ive allowed CI to locate its Equipment at the Gaffney Facility to mine for bitcoin. According to BQ, this allegedly resulted in BQ paying for electricity that benefited CI.

The key reason that these counterclaims fail is because, as between BQ and CI, CI did nothing wrong. If BQ has any claims based on the allegations made, those claims should be directed at Bit5ive and not CI.

### **STANDARD OF REVIEW**

Rule 12(b)(6) provides for the dismissal of a claim that fails "to state a claim upon which relief can be granted." "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).

"[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [however] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To discount such unadorned conclusory allegations, 'a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Francis*, 588 F.3d at 193 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Next, the Court must review the well-pleaded facts to determine if the "[f]actual allegations [are sufficient] to raise a right to relief above the speculative level." *McCleary-Evans v. Maryland Dept. of Transp.*, 780 F.3d 582, 585 (4th Cir. 2015) (quoting *Twombly*, 550 U.S. at 555).

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and

common sense." *Id.* "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.*

## BQ'S ALLEGATIONS

"On or around October 18, 2021, Blockquarry subleased from Litchain Corp. real property located at 154 Hyatt Street, Gaffney, South Carolina 29341 (the "Gaffney Site")." (Answer and Countercl. at ¶ 140). "Blockquarry and its clients began bitcoin mining at the Gaffney Site in or around March of 2022." (Answer and Countercl. at ¶ 141). "Blockquarry engaged a third party management company called Bit5ive, LLC ("Bit5ive") to manage day-to-day operations at the Gaffney Site." (Answer and Countercl. at ¶ 142).

"Without Blockquarry's knowledge or consent, Bit5ive and its principal, Robert Collazo ("Collazo") allowed Plaintiff to operate bitcoin miners at the Gaffney Site. Blockquarry did not authorize Plaintiff to operate bitcoin miners at the Gaffney Site and did not authorize Plaintiff's personnel or bitcoin miners to enter or access the Gaffney Site." (Answer and Countercl. at ¶ 143).

"Blockquarry ***unknowingly*** paid for the electricity consumed by Plaintiff's bitcoin miners that operated on the Gaffney Site." (Answer and Countercl. at ¶ 145) (emphasis added). "Upon information and belief, Plaintiff may have paid Bit5ive, or its affiliate Uptime Hosting LLC, for some portion of Plaintiff's consumption of electricity at the Gaffney Site. However, upon information and belief, Collazo was providing discounts to Plaintiff on the invoices for electricity." (Answer and Countercl. at ¶ 146).

"Collazo, Bit5ive, and Uptime Hosting LLC did not reimburse Blockquarry for amounts Blockquarry was paying for electricity at the Gaffney Site, and Plaintiff was not paying for the entire amount of power its bitcoin miners consumed." (Answer and Countercl. at ¶ 147).

3

## LEGAL ARGUMENT

### I. UNJUST ENRICHMENT/RESTITUTION

BQ seeks restitution "to pay for the electric power consumed [by CI]." (Answer and Countercl. at ¶ 152). The elements for restitution are:

> Restitution is a remedy designed to prevent unjust enrichment. To recover on a theory of restitution, the plaintiff must show (1) that he conferred a non-gratuitous benefit on the defendant; (2) that the defendant realized some value from the benefit; and (3) that it would be inequitable for the defendant to retain the benefit without paying the plaintiff for its value.

*Sauner v. Pub. Serv. Auth. of S.C.*, 354 S.C. 397, 409, 581 S.E.2d 161, 167 (2003) (internal citations omitted). As noted above, BQ alleges it "unknowingly paid for the electricity consumed by Plaintiff's bitcoin miners." (Answer and Countercl. at ¶¶ 145, 150). Therefore, as a matter of law, BQ cannot allege a "non-gratuitous" benefit.

South Carolina law establishes that "not just any benefit conferred meets the first element (of restitution). Rather, the benefit must be non-gratuitous . . . ." *Inglese v. Beal*, 403 S.C. 290, 298, 742 S.E.2d 687, 691 (Ct. App. 2013).

> To be conferred nongratuitously, the plaintiff must confer the benefit either (1) at the defendant's request or (2) in circumstances where the plaintiff reasonably relies on the defendant to pay for the benefit and the defendant understands or ought to understand that the plaintiff expects compensation and looks to him for payment.

*Campbell v. Robinson*, 398 S.C. 12, 24, 726 S.E.2d 221, 228 (Ct. App. 2012) (quoting *Niggel Assocs., Inc. v. Polo's of N. Myrtle Beach, Inc.*, 296 S.C. 530, 532-33, 374 S.E.2d 507, 509 (Ct. App. 1988)). "It is not enough that the defendant has knowledge of the plaintiff's conduct; **he must have induced the plaintiff to confer the benefit**." *Niggel Assocs.*, 296 S.C. at 533, 374 S.E.2d at 509. (emphasis added).

The Plaintiff did not induce BQ to do anything. Indeed, BQ acknowledges that it was Bit5ive that allowed CI to operate bitcoin miners on its site "[w]ithout Blockquarry's knowledge

4

or consent." (Answer and Countercl. at ¶ 143). This resulted in BQ allegedly "unknowingly [paying] for the electricity consumed by Plaintiff's bitcoin miners." (Answer and Countercl. at ¶ 145). As with the parties in *Niggel Assocs.,* any benefit CI received "was an incidental result of dealings between others in which [CI] did not participate and over which it assumed no control." *Id.* at 533, 374 S.E.2d at 509. Because CI was not privy to the dealings between BQ and Bit5ive, BQ cannot alleged that CI "underst[ood] or ought to understand that the plaintiff expects compensation and looks to him for payment." *Campbell*, 398 S.C. at 24, 726 S.E.2d at 228.

Any alleged benefit received by CI was merely gratuitous and the counterclaim for restitution should be dismissed.

## II.  CONVERSION

BQ alleges that CI converted "the money Blockquarry paid for Plaintiff's consumption of electricity." (Answer and Countercl. at ¶ 156). "'Conversion' is defined as the unauthorized assumption and exercise of the rights of ownership over goods or personal chattels belonging to another, to the alteration of their condition or to the exclusion of the rights of the owner." *Mullis v. Trident Emergency Physicians*, 351 S.C. 503, 506-07, 570 S.E.2d 549, 550 (Ct. App. 2002) (string citation omitted)

BQ's counterclaim does not plead plausible facts that demonstrate that CI ever "assumed and exercised the rights of ownership" over the money BQ claims it is owed. BQ allegedly "paid for the electricity consumed by Plaintiff's bitcoin miners," (Answer and Countercl. at ¶ 145), but that money never passed into the hands of CI. Indeed, in related litigation, BQ affirmatively pleaded that it "directly" paid the utility (Gaffney Board of Public Works) for the electricity at the Gaffney Facility.[1]

---

[1] *See* Complaint, ¶¶ 33-35 in *Blockquarry Corp. v. Litchain Corp., et al.*, C/A No. 7:23-cv-01427-TMC (ECF No. 1).

BQ cannot allege that CI ever "assumed and exercised the rights of ownership" of the money it now seeks. Therefore, BQ's counterclaim for conversion should be dismissed.

### III. TRESPASS

BQ claims that CI trespassed upon its property "by placing its miners on the site and sending its personnel to the site." (Answer and Countercl. at ¶ 163). "To state a claim for trespass, a plaintiff must allege facts showing three elements—that the defendant took 'an affirmative act,' that 'the invasion of the land [was] intentional,' and that 'the harm caused [was] the direct result of that invasion.'" *Johnston v. Anderson Reg'l Landfill, LLC*, 725 F. Supp. 3d 527, 538 (D.S.C. 2024) (quoting *Snow v. City of Columbia*, 305 S.C. 544, 553, 409 S.E.2d 797, 802 (Ct. App. 1991)).

BQ's pleading does not establish that CI's placement of the Equipment at the Gaffney Site was an "intentional invasion." Rather, BQ alleges that Bit5ive "allowed Plaintiff to operate bitcoin miners at the Gaffney Site."[2] (Answer and Countercl. at ¶ 143). "The essence of trespass is the unauthorized entry onto the land of another." *Ravan v. Greenville Cnty.*, 315 S.C. 447, 464, 434 S.E.2d 296, 306 (Ct. App. 1993). To be liable for trespass, a defendant "must intend the act which constitutes the unwarranted entry on another's land." *Snow*, 315 S.C. at 553, 409 S.E.2d at 802. That intent cannot exist when a defendant has been "allowed" entry upon the land by the entity that is outwardly exercising authority over the land. For this reason, the trespass counterclaim should be dismissed.

---

[2] BQ pleads "Bit5ive did not have the agency or authority to allow Plaintiff to access the Gaffney Site." (Answer and Countercl. at ¶ 144). Bit5ive's action in allegedly exceeding its authority, however, is not the act of CI.

## CONCLUSION

If the allegations made by BQ are supported by evidence, then BQ may have a claim against Bit5ive. CI, however, is an innocent third party to those allegations. This is the key reason why BQ's counterclaims fail to state a claim for which relief can be granted and should be dismissed.

Respectfully submitted,

**WILLIAMS BURKE LLP**

/s/Burl F. Williams
Burl F. Williams, (FED BAR NO. 10556)
201 Riverplace, Suite 501
Greenville, South Carolina 29601
(864) 546-5035
burl@williamsburke.com

Russell T. Burke (FED BAR NO. 1604)
1320 Main Street, Suite 300
Meridian Building
Columbia, South Carolina 29201
(803) 724-1200
russell@williamsburke.com

December 9, 2024     ***Counsel for Crypto Infiniti, LLC***