IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| Crypto Infiniti, LLC, | ) | Civil Action No. 7:24-cv-04911-TMC |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | **BLOCKQUARRY CORP. f/k/a ISW** |
| | ) | **HOLDINGS, INC.'S RESPONSE IN** |
| Blockquarry Corp. f/k/a ISW Holdings, Inc., | ) | **OPPOSITION TO CRYPTO INFINITI,** |
| Pantheon Resources, Inc. and Hylmen, LLC., | ) | **LLC'S MOTION TO DISMISS** |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

Defendant Blockquarry Corp., f/k/a ISW Holdings, Inc. ("Blockquarry") hereby submits its Response in Opposition to Plaintiff Crypto Infiniti, LLC's ("Plaintiff") Motion to Dismiss, (ECF No. 28) (the "Motion"). For the reasons set forth herein, the Court should deny Plaintiff's Motion in its entirety.

## I. INTRODUCTION

Plaintiff has raised claims related to the possession of certain bitcoin miners, and Blockquarry raised compulsory counterclaims against Plaintiff in connection with Plaintiff's unauthorized operation of bitcoin miners at a site subleased by Blockquarry. Plaintiff's Motion, made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, improperly attacks the factual basis of each of Blockquarry's counterclaims and incorrectly argues that Blockquarry has not pled each of the elements of its counterclaims. As set forth fully below, Plaintiff's arguments fall far short of the standard required to grant a motion made pursuant to Rule 12(b)(6). Accordingly, the Court should deny Plaintiff's Motion in its entirety and permit Blockquarry's counterclaims to proceed.

## II.   RELEVANT FACTUAL BACKGROUND

This action arises from a bitcoin mining operation located at 154 Hyatt Street, Gaffney, South Carolina 29341 (the "Gaffney Site"). Blockquarry is a cryptocurrency mining development company that provides its clients with cryptocurrency mining development services in the United States. In October of 2021, Blockquarry subleased the Gaffney Site from Litchain Corp. (Answ. & Countercl. ¶ 140, ECF No. 17.) Blockquarry engaged a third party management company, Bit5ive, LLC ("Bit5ive"), to manage day-to-day operations at the Gaffney Site. (*Id.* at ¶ 142.) Without Blockquarry's knowledge or consent, Bit5ive and its principal, Robert Collazo, allowed Plaintiff to operate bitcoin miners at the Gaffney Site. (*Id.* at ¶ 143.) Blockquarry did not authorize Plaintiff to operate bitcoin miners at the Gaffney Site, and did not authorize Plaintiff's personnel or bitcoin miners to enter or access the Gaffney Site. (*Id.*) Neither Bit5ive, nor its agents or affiliates, had the agency or authority to allow Plaintiff to access the Gaffney Site. (*Id.* at ¶ 144.)

Plaintiff's unauthorized operation of bitcoin miners at the Gaffney Site consumed large amounts of electricity each month, and Blockquarry paid for the electricity consumed by Plaintiff's bitcoin miners that operated without Blockquarry's knowledge or authorization at the Gaffney Site. (*Id.* at ¶ 145.) Upon information and belief, Plaintiff may have paid Bit5ive, or its affiliate Uptime Hosting, LLC, for ***some portion*** of Plaintiff's consumption of electricity at the Gaffney Site, and was likely receiving purported discounts from Collazo for the same.[1] (*Id.* at ¶ 146.) Collazo, Bit5ive, Uptime Hosting, and Plaintiff did not reimburse Blockquarry for the amounts Blockquarry was paying for electricity at the Gaffney Site for Plaintiff's bitcoin miners to operate,

---

[1] Upon information and belief, Collazo converted the amounts Plaintiff believed it was paying Bit5ive for electricity.

and Plaintiff did not pay for the entire amount of power consumed by its bitcoin miners. (*Id.* at ¶ 147.)

Plaintiff filed the Amended Complaint in this lawsuit on September 7, 2024, alleging that Blockquarry, Defendant Pantheon Resources, Inc. ("Pantheon"), and Defendant Hylmen, LLC ("Hylmen") failed to return certain bitcoin miners to Plaintiff. (Am. Compl., ECF No. 6.) In response, Blockquarry raised three counterclaims against Plaintiff for unjust enrichment, conversion, and trespass, in connection with Plaintiff's operation of bitcoin miners at the Gaffney Site. (Answ. & Countercl., ECF No. 17.) On December 9, 2024, Plaintiff filed its Motion to Dismiss Counterclaims of Defendant Blockquarry, Corp. (Mot. Dismiss, ECF No. 28.) For the reasons set forth below, the Court should deny Plaintiff's Motion in its entirety.

### III.   STANDARD OF REVIEW

To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Furthermore, a Rule 12(b)(6) motion to dismiss "should not be granted unless it appears certain that the plaintiff can prove no set of facts which would

support its claim and would entitle it to relief." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

## IV.   ARGUMENT

As an initial matter, Plaintiff misunderstands the applicable standard for a Rule 12(b)(6) motion. Rather than analyze whether Blockquarry has stated claims for relief that are plausible on their face, Plaintiff prematurely attacks the merits of Blockquarry's counterclaims and makes arguments regarding the factual basis for Blockquarry's counterclaims. Both efforts are entirely improper at this stage of the litigation and directly contravene Rule 12(b)(6).

A pleading may survive a motion to dismiss for failure to state a claim even if it is "improbable" that a claimant would be able to prove those facts, and even if the possibility of recovery is extremely "remote and unlikely." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Moreover,

> a Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.

*Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Here, Blockquarry's counterclaims exceed the pleading standards of Rule 8 and do far more than simply ask this court to imagine its right to relief. Blockquarry has presented sufficient factual allegations such that this Court can reasonably infer that Plaintiff is liable for the alleged misconduct. Plaintiff has failed to show beyond any doubt that Blockquarry can prove no set of facts to support its counterclaims against Plaintiff, and thus, Plaintiff's Motion fails as a matter of law. As set forth in detail below, because Blockquarry has pled each of the elements of its counterclaims with more than sufficient facts and particularity, Plaintiff's Motion should be denied.

**A. Blockquarry Sufficiently Pled Each Element of its Counterclaim for Unjust Enrichment.**

Blockquarry's first counterclaim is a claim for unjust enrichment. (Answ. & Countercl. ¶¶ 149-154, ECF No. 17.) Plaintiff argues that this claim should be dismissed because Blockquarry is unable to establish that the benefit it conferred on Plaintiff was nongratuitous. (Mot. Dismiss at 4-5, ECF No. 28.) Plaintiff's argument fails because (1) Blockquarry has pled each element of a claim for unjust enrichment, (2) Blockquarry has adequately pled that the benefit conferred on Plaintiff was nongratuitous, and (3) Plaintiff's arguments improperly rely on the resolution of questions of fact.

To state a claim for unjust enrichment in South Carolina, a party must plead the following elements: "(1) a benefit conferred by the [counterclaim] plaintiff upon the [counterclaim] defendant; (2) realization of that benefit by the [counterclaim] defendant; and (3) retention of the benefit by the [counterclaim] defendant under circumstances that make it inequitable for him to retain it without paying its value." *Regions Bank v. Wingard Props., Inc.*, 394 S.C. 241, 257, 715 S.E.2d 348, 356 (S.C. Ct. App. 2011) (quoting *Myrtle Beach Hosp., Inc. v. City of Myrtle Beach*, 341 S.C. 1, 8-9, 532 S.E.2d 868, 872 (2000)). The benefit conferred by the claimant must be conferred nongratuitously, which means it was conferred either "(1) at the [counterclaim] defendant's request or (2) in circumstances where the [claimant] reasonably relies on the [counterclaim defendant] to pay for the benefit and the [counterclaim] defendant understands or ought to understand that the [claimant] expects compensation and looks to him for payment." *Campbell v. Robinson*, 398 S.C. 12, 24, 726 S.E.2d 221, 228 (S.C. Ct. App. 2012) (quoting *Niggel Assocs. v. Polo's of N. Myrtle Beach, Inc.*, 296 S.C. 530, 532, 374 S.E.2d 507, 509 (S.C. Ct. App. 1988)).

In its counterclaim, Blockquarry alleges that (1) it conferred a benefit on Plaintiff by providing hosting services and facilitating electric power to Plaintiff's bitcoin miners at the Gaffney Site (Answ. & Countercl. ¶ 150, ECF No. 17); (2) Plaintiff realized this benefit by operating bitcoin miners at the Gaffney Site and consuming electric power funded by Blockquarry in order to mine for bitcoins (*id.* at ¶ 151); and (3) it would be unjust for Plaintiff to retain the benefits without paying Blockquarry for the amount of electric power funded by Blockquarry (*id.* at ¶ 153). Further, Blockquarry alleged that the benefit conferred on Plaintiff was nongratuitous because "Blockquarry relied on any entity operating at the Gaffney Site, even entities such as Plaintiff that operated without Blockquarry's knowledge, to pay for the electric power consumed," and "Plaintiff ought to understand that Blockquarry expects compensation and looks to Plaintiff for payment." (*Id.* at ¶ 152.) Based on these allegations, Blockquarry has sufficiently pled each element of its counterclaim for unjust enrichment, and specifically pled facts supporting its contention that the benefit conferred on Plaintiff was nongratuitous.

Plaintiff argues that Blockquarry cannot maintain a counterclaim for unjust enrichment because the benefit conferred by Blockquarry to Plaintiff was "gratuitous." (Mot. Dismiss at 5, ECF No. 28.) Specifically, Plaintiff alleges that it had no knowledge of Blockquarry's conduct, and therefore, any benefit received by Plaintiff "was an incidental result of dealings between others[.]" (*Id.*) However, Plaintiff's argument presents factual questions that are inappropriate for the Court to consider or resolve at the Rule 12(b)(6) stage. Whether the benefit conferred by Blockquarry was gratuitous or non-gratuitous is a question of fact. Whether Plaintiff had knowledge that Blockquarry was operating the Gaffney Site and paying for the electricity consumed by Plaintiff's bitcoin miners is also a question of fact. When considering a Rule 12(b)(6) motion, the Court must consider all well-pled allegations in the counterclaims as true, and must

6

not resolve factual questions. "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; 'importantly, [a Rule 12(b)(6) motion] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (quoting *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). Therefore, Plaintiff's challenges to Blockquarry's unjust enrichment counterclaim are improper at this stage in the litigation.

### B. Blockquarry Sufficiently Pled Each Element of its Counterclaim for Conversion.

Blockquarry's second counterclaim is a claim for conversion. (Answ. & Countercl. ¶¶ 155-160, ECF No. 17.) Plaintiff argues that this counterclaim should be dismissed because it has not assumed and exercised the rights of ownership over the money Blockquarry seeks. (Mot. Dismiss at 5, ECF No. 28.) Plaintiff's arguments fail because (1) Blockquarry has sufficiently pled each element of its counterclaim for conversion, and (2) the money Blockquarry seeks is properly the subject of a claim for conversion.

In South Carolina, "[t]o recover in an action for conversion, the [claimant] must prove: (1) an interest by the [counterclaim] plaintiff in the thing converted; (2) the [counterclaim] defendants converted the property to their own use; and (3) the use was without the [claimant's] permission." *May v. Peninger*, No. 2:07-cv-00864-CWH, 2008 WL 509470, at *12 (D.S.C. Feb. 22, 2008). In its counterclaim, Blockquarry alleges that (1) it had an interest in the money converted by Plaintiff (Answ. & Countercl. ¶ 156, ECF No. 17); (2) Plaintiff converted the money to its own use, to the exclusion of Blockquarry (*id.* ¶¶ 156-158); and (3) Plaintiff's actions were without Blockquarry's consent (*id.* at ¶¶ 143-145). Therefore, Blockquarry has sufficiently pled each and every element of a claim for conversion.

Plaintiff argues that Blockquarry cannot maintain a counterclaim for conversion because Blockquarry "cannot allege that [Plaintiff] ever 'assumed and exercised the rights ownership' of

7

the money [Blockquarry] now seeks." (Mot. Dismiss at 5, ECF No. 28.)  Yet, Blockquarry has alleged that Plaintiff did assume and exercise the rights of ownership over the money Blockquarry seeks to recover.  (Answ. & Countercl. ¶ 159, ECF No. 17.)  Moreover, South Carolina law recognizes that "[m]oney may be the subject of conversion when it is capable of being identified." *Coxe v. Gov't Personnel Mut. Life Ins. Co.*, C/A No. 3:23-cv-389-SAL, 2023 WL 11885972, at *12 (D.S.C. Aug. 17, 2023).  Further, a claim for conversion can arise by "wrongful detention." *May v. Peninger*, No. 2:07-cv-00864-CWH, 2008 WL 509470, at *12 (D.S.C. Feb. 22, 2008).

Plaintiff is a party that entered the Gaffney Site without Blockquarry's permission or authorization and utilized electricity for which Blockquarry paid.  As Blockquarry alleges in its counterclaim, Plaintiff is obligated to deliver the specific, identifiable funds to Blockquarry consisting of the difference between the amount paid by Plaintiff to Bit5ive (if any) and the total cost of the actual amount of electricity consumed by Plaintiff's bitcoin miners. (Answ. & Countercl. ¶ 158, ECF No. 17.)  Blockquarry has also alleged that Plaintiff has wrongfully detained the funds following Blockquarry's demand for the same, which additionally gives rise to a claim for conversion.  *See May*, 2008 WL 509470 at *12.  Accordingly, Plaintiff's arguments do not overcome the fact that Blockquarry has adequately pled its conversion counterclaim.

### C. Blockquarry Sufficiently Pled Each Element of its Counterclaim for Trespass.

Blockquarry's third counterclaim is a claim for civil trespass. (Answ. & Countercl. ¶¶ 161-165, ECF No. 17.)  Plaintiff argues that this counterclaim should be dismissed because it allegedly had permission to access the Gaffney Site from a third party and therefore lacks the requisite intent for Blockquarry to maintain a claim for trespass. (Mot. Dismiss at 6, ECF No. 28.)  Plaintiff's arguments fail because (1) Blockquarry has sufficiently alleged each element of its counterclaim for trespass, and (2) Plaintiff's arguments rely on the resolution of a question of fact.

In South Carolina, "[t]he unwarrantable entry on land in the peaceable possession of another is a trespass, without regard to the degree of force used, the means by which the enclosure is broken, or the extent of the damage inflicted. . . . The entry itself is the wrong." *Snow v. City of Columbia*, 305 S.C. 544, 552, 409 S.E.2d 797, 802 (S.C. Ct. App. 1991). "Thus, for example, if one without license from the person in possession of land walks upon it, or casts a twig upon it, or pours a bucket of water upon it, he commits a trespass by the very act of breaking the enclosure." *Id.* To establish a cause of action for trespass, "there must be an affirmative act, the invasion of the land must be intentional, and the harm caused must be the direct result of that invasion." *Id.*

In its counterclaim, Blockquarry alleges that (1) it had peaceable possession of the Gaffney Site (Answ. & Countercl. ¶ 162); (2) Plaintiff took affirmative acts to physically enter the Gaffney Site without Blockquarry's knowledge or permission (*id.* at ¶ 163); (3) Plaintiff's invasion of the site was intentional (*id.* at ¶ 164); and (4) Blockquarry was damaged as a result of Plaintiff's actions (*id.* at ¶ 165). Therefore, Blockquarry has adequately pled each and every element of a claim for civil trespass.

Plaintiff alleges that its entry on the Gaffney Site cannot be considered intentional because it was "allowed" to enter the site by Blockquarry's third party management company. (Mot. Dismiss at 6, ECF No. 28.) However, as Blockquarry alleged in its counterclaims, its third party management company did not have the authority to give Plaintiff permission to enter the Gaffney Site. (Answ. & Countercl. ¶¶ 143-144, ECF No. 17.) Plaintiff contends that "Bit5ive's action in allegedly exceeding its authority [ ] is not the act of Beeqb." (Mot. Dismiss at 6 n.2, ECF No. 28.) The key to this counterclaim is that Plaintiff did not have **Blockquarry's** permission to enter or access the Gaffney Site, and Plaintiff's actions occurred without **Blockquarry's** knowledge. Further, "consent to enter property" is not necessarily a defense to trespass, specifically when "a

9

wrongful act is done in excess of and in abuse of authorized entry[.]" *Comm'ers of Public Works of City of Charleston v. Costco Wholesale Corp.*, Civil Action No. 2:21-cv-42-RMG, 2021 WL 5908758, at *8 (D.S.C. Dec. 13, 2021). Simply put, the extent of permission received by Plaintiff (if any) from any party to enter and access the Gaffney Site is a question of fact that is improper to consider or resolve at this stage.

## V.     CONCLUSION

For the reasons set forth above, the Court should deny Plaintiff's Motion. Blockquarry has met its pleading standard under Rule 8 of the Federal Rules of Civil Procedure as to each of its counterclaims for unjust enrichment, conversion, and trespass, and should be permitted to proceed with these counterclaims.

Respectfully submitted,

**MAYNARD NEXSEN PC**

s/ *Andrew A. Mathias*
Andrew A. Mathias, Fed. ID No. 10166
Konstantine P. Diamaduros, Fed. ID No. 12368
Elizabeth C. Edmondson, Fed. ID No. 13208
104 S. Main Street, Suite 900 (29601)
Post Office Drawer 10648
Greenville, South Carolina 29603
Phone:  864.370.2211
Fax:  864.477.2617
AMathias@maynardnexsen.com
KDiamaduros@maynardnexsen.com
EEdmondson@maynardnexsen.com

December 23, 2024
Greenville, South Carolina

*Attorneys for Defendant Blockquarry Corp. f/k/a ISW Holdings, Inc.*

10